ROBERT M. MORSE & another, trustees, *vs.* JAMES J. O'BRIEN, guardian *ad litem.*

Suffolk. October 18, 1916. — December 13, 1916.

Present: RUGG, C. J., BRALEY, PIERCE, & CARROLL, JJ.

*Capital and Income. Trust,* Apportionment of expense of improvements.

Where it became the duty of trustees, holding a trust fund consisting of real and personal property, to remodel an old building that formed a part of the trust property, and in doing this work about a year was consumed during which time the tenants of the building necessarily were turned out and the amount of rent that such tenants would have paid had they remained in occupation amounted to $1,691, and where to pay for the improvements certain securities belonging to the trust were sold and the dividends which otherwise would have been paid on such securities between the time of their sale and the time of the completion of the alterations amounted to $432, and where also the result of such remodel-.

ling was to benefit by a change of investment both the life tenants and the remaindermen, it was *held,* that the trustees, in paying for the improvement out of the capital of the trust, in the exercise of their discretion properly might include as a part of the expense the loss of rents while the work was in progress, and that an item in their probate account charging to capital the sum of $1,691, representing such loss of rents, and crediting it to income should be allowed.

APPEAL from a decree of the Probate Court for the county of Suffolk by which an item of $1,691.45 in the second account of the trustees under the will of Benjamin Adams, late of Boston, was disallowed.

The case came on to be heard before *Pierce,* J., who at the request of the parties reserved it upon the pleadings, an agreed statement of facts and an offer of proof by the petitioners for determination by the full court.

*J. Noble,* for the appellants.

*J. J. O'Brien,* (*I. A. Wyner* with him), for the guardian *ad litem.*

CARROLL, J. This is an appeal from a decree of the Probate Court disallowing an item of $1,691.45 in the account of the trustees under the will of Benjamin Adams. This item was charged to capital and credited to income, to reimburse the life tenants for the loss of rentals during the remodelling of the building 5–23 Doane Street, Boston. The trust included the residue of the personal and real estate. In 1909 the personal property was appraised at $122,504.82, invested in dividend paying securities, and the real estate at $366,600, including the premises numbered 5–23 Doane Street, valued at $106,000.

The building on Doane Street was built in the early forties and had not since that time been altered in any substantial manner. The offices were small, inconvenient and inferior for such use, new tenants could not be obtained and the income was decreasing as the building grew older. The trustees remodelled the building, believing it would be for the benefit of the life tenants and remaindermen. The work of remodelling began late in the summer of 1909 and was completed in July, 1910, at a total cost of $57,196.88. The expense of alteration was paid from the proceeds of the sale of rights, of land and of income bearing securities to the amount of $48,717.61. The agreed statement of facts shows that the "trustees were under a duty to rebuild this building, and that the cost of such rebuilding was properly chargeable to the principal of the trust fund;" and "if it is within the powers of trus-

tees to . . . thus include in the cost of the remodelling the sum objected to, that these trustees acted in entire good faith in making such apportionment;" but the guardian *ad litem* contends that they did not use "the proper rule of apportionment."

"During the alterations the tenants then in the building had to be turned out, and the amount of rental that would have been received from these tenants, if they had remained in occupation, amounted to the sum of $1,691.45, which amount was equal to four per cent on the value of the rented space vacated." The dividends paid on the securities sold by the trustees between the dates of sale and the completion of the alterations amounted to a total of $432.50. The rents have increased since the building was remodelled.

Although the improvements were a permanent and substantial advantage to the entire estate and the trustees exercised a sound discretion in making them, the guardian *ad litem* now contends that the trustees had no power, in making the apportionment between capital and income, to include in the cost of reconstruction the sum objected to, representing the loss of rents.

To carry on the contemplated work it was necessary to vacate the premises; and in seeking to reach an equitable adjustment between the parties in interest and for this purpose to ascertain the cost of the completed structure, the trustees included as a part of the expense the loss of rents while the work was in progress. This loss, made necessary by the rebuilding, was in our opinion a part of the expense, and might properly be considered in determining the entire cost of the work. *Boles* v. *Boston,* 136 Mass. 398. *Warren* v. *Pazolt,* 203 Mass. 328. See *Williams* v. *Boston,* 190 Mass. 541, 551. The only reasonable inference from the agreed statement of facts is that this loss was the net amount of the rents which the life tenants would have received but for the reconstruction.

So far as the remaindermen were concerned, nothing was lost by the transaction. The sale of the securities and other property increased the value of the real estate, and was merely a change of investment. On the other hand, the income of the life tenants was reduced by the loss of rents and by the loss of dividends in the sum of $432.50 on the securities sold by the trustees in order to raise money for reconstructing the building, for which no sub-

stitution is made except indirectly through the rents. See *Edwards v. Edwards*, 183 Mass. 581. The lost rent being a part of the cost of the completed building, if this item of $1,691.45 is disallowed, the entire loss falls on the life tenants. Manifestly this would be unfair to them.

In proportion to the benefits received the life tenants and remaindermen are to share equally the expense; and when the respective benefits cannot be accurately determined, it is difficult to decide precisely what share of the expenses should be paid by each. In such a case, it is apparent that the question must be left largely to the sound discretion of those whose duty it is to manage the estate for the best interest of all the beneficiaries. In *Jordan v. Jordan*, 192 Mass. 337, 343, where changes and improvements were made in a building and the division of the expenses by the trustees between capital and income was questioned, Braley, J., said, "In the management of such property details of administration must be left very largely to the sound discretion of those entrusted by the testator with its development as a source of revenue, and, these disbursements having been found justifiable, the apportionment by the trustees so far as it is now in dispute does not appear to have been erroneous."

There is nothing to show that the discretion of the trustees was exercised in an improper or capricious way, or that the life tenants were given an unfair advantage over the remaindermen. As the trustees acted in good faith and the rule of apportionment adopted does not appear to be unjust or inequitable, the apportionment as made by them should stand.

The decree of the Probate Court is to be modified by allowing the item of $1,691.45, and so modified is affirmed.

*So ordered.*